UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARMEN NEGRON,

                Plaintiff,                1:11-cv-1385
                                                      (GLS/RFT)

        v.

POLICE OFFICER RICHARD
JACOBS et al.,

                Defendants.
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Sussman, Watkins Law Firm              MICHAEL H. SUSSMAN, ESQ.
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY 10924

**FOR THE DEFENDANTS:**
Goldberg, Segalla Law Firm              JONATHAN M. BERNSTEIN,
8 Southwoods Boulevard                  ESQ.
Suite 300                                      WILLIAM J. GREAGAN, ESQ.
Albany, NY 12211-2526

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Carmen Negron commenced this action against defendants

Police Officer Richard Jacobs and Police Officer David Kindt, both

employed by the Village of Ellenville Police Department, pursuant to 42 U.S.C. § 1983, alleging that defendants used excessive force against her in violation of the Fourth Amendment.  (Compl. ¶¶ 2, 17, Dkt. No. 1.)  Pending is defendants' motion for summary judgment.  (Dkt. No. 15.)  For the reasons that follow, the motion is denied.

## II. **Background**[1]

On the morning of August 9, 2010, Negron's son, Jose, was stopped by officer Kindt for Vehicle and Traffic infractions near the Negron home while operating Negron's vehicle.  (Pl.'s Statement of Material Facts (SMF) ¶¶ 1-2, 5, 8, 10, Dkt. No. 16.)  After learning about the stop, Negron, accompanied by her husband and other son Christopher, left her home, approached her stopped vehicle, and asked Jose why he had been pulled over.  (*Id.* ¶¶ 2, 4, 7, 8.)  Negron made a similar inquiry of officer Kindt to which he responded "mind [your] own business."  (*Id.* ¶¶ 12, 13.)  Officer Kindt eventually presented Jose with two tickets, and began to pull away in his police vehicle.  (*Id.* ¶¶ 6, 15-16.)  Thereafter, Jose approached officer Kindt's police car, which prompted the officer to tell Jose that he was under

---

[1] Unless otherwise noted, the facts are undisputed.

arrest, and sent Jose running toward the nearby Negron home. (*Id.* ¶¶ 19-20, 22.) Officer Kindt waited for backup and, at some point, officer Jacobs arrived. (*Id.* ¶¶ 24, 27.)

Christopher "advise[d] his brother[, who had by then gotten to the threshold of the home,] not to exit the home." (*Id.* ¶¶ 23, 38.) The parties dispute several of the details regarding what transpired afterward. Ultimately, Kindt and Jacobs "attempted to arrest [Negron] for obstruction of governmental administration and disorderly conduct," and Negron resisted arrest. (Defs.' Statement of Material Facts (SMF) ¶¶ 3-4, Dkt. No. 15, Attach. 14.) As a result of the arrest, Negron suffered some injuries and sought medical treatment for same. (Dkt. No. 15, Attachs. 8-9.) Following a jury trial in Ellenville Justice Court, Negron was found guilty of obstructing governmental administration, *see* N.Y. Penal Law § 195.05, resisting arrest, *see* N.Y. Penal Law § 205.30, and one count of disorderly conduct, *see* N.Y. Penal Law § 240.20(1), but not guilty of a separate count of disorderly conduct, *see* N.Y. Penal Law § 240.20(3), or unlawful disposal of a uniform traffic summons and complaint, *see* N.Y. Veh. & Traf. Law § 207(5), related to the incident with officers Kindt and Jacobs. (Dkt. No. 15, Attach. 10 at 426-27, 434-35.)

Negron commenced this action in November 2011 alleging that defendants used excessive force in effectuating her arrest on August 9, 2010. (Compl. ¶¶ 4-17) Following joinder of issue, (Dkt. No. 6), and the close of discovery, (Dkt. No. 12 at 1), defendants moved for summary judgment, (Dkt. No. 15.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

Defendants argue that they are entitled to summary judgment on Negron's sole claim of excessive force. (Dkt. No. 15, Attach. 15 at 2-10.) Specifically, defendants contend that Negron's conviction for resisting arrest "collaterally and judicially estop[s her] from claiming she did not resist," and justified the use of force, which an expert opines was reasonable in this case. (*Id.* at 5-9.) According to defendants, Negron's alleged injury was also "minimal at best," and, alternatively, they are

4

entitled to qualified immunity.  (*Id.* at 10-13.)  Negron argues, and the court agrees, that disputed issues of fact preclude summary judgment.  (Dkt. No. 17 at 17-21.)

"In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [a] plaintiff[] must establish that the government interests at stake were outweighed by the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests."  *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 26 (2d Cir. 2011) (internal quotation marks and citation omitted).  "'In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'"  *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

"[C]laims of excessive force arising in the context of an arrest under the Fourth Amendment's objective reasonableness test," are analyzed "paying 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

5

whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Phelan v. Sullivan*, No. 12-3604-cv, 2013 WL 5183664, at *2 (2d Cir. Sept. 17, 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The entirety of the record must be evaluated "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396)); *accord Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397).

"[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of N.Y.*, No. 11-CV-2925, 2013 WL 1621994, at *7 (E.D.N.Y. Apr. 16, 2013) (internal quotation marks and citation omitted). "'[S]hort-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth'" have been held to

6

be *de minimis*, and, thus unactionable. *Id.* (quoting *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)).

Here, there is no doubt that material issues of fact exist such that a trial is necessary. There are disputes about what happened leading up to Negron's arrest, the amount and application of the force used to arrest her, and the extent of her injuries. Officer Kindt claimed during his deposition that Negron made certain statements to the effect that, among other things, she would not permit the officers to arrest her son and that they were "pigs." (Dkt. No. 15, Attach 4 at 33-34.) Officer Jacobs explained during his deposition that Negron pushed Jose into the house, slammed the door closed behind him, and blocked the door to deny the officers entry, which prompted him to tell her that she was "under arrest for obstructing." (Dkt. No. 15, Attach., 5 at 40-43, 57.) Negron admitted during her deposition that, after the police officers handcuffed Christopher, she said to them: "well, just for that, you're not coming into my house." (Dkt. No. 15, Attach. 7 at 99.) She flatly denies, however, that she made any statement that the police were pigs, she blocked the doorway, and officer Jacobs told her that she was under arrest for obstructing. (Dkt. No. 19 ¶ 2(a)-(b), (f).)

On the question of the force used, officer Jacobs claims that he merely "grabbed [Negron's] wrist" to handcuff her, which caused her to "flail[]," try to "pull away", and "spin[] around." (Dkt. No. 15, Attach 5 at 43.) Officer Kindt stated that Negron began "pulling, kicking, [and] fighting" when officer Jacobs grabbed her arm to handcuff her, and that she also "attempt[ed] to punch." (Dkt. No. 15, Attach. 4 at 42-43.) According to officer Jacobs, officer Kindt came over when Negron began to resist and directed her to "stop resisting" two or three times, and officer Kindt then grabbed Negron's left wrist. (Dkt. No. 15, Attach 5 at 43.) In an effort to maintain control of Negron, officer Jacobs stated that he "pushed" her against the wall, "leaned against her with [his] weight," and "had [his] right shoulder in her shoulder blade to maintain control and leverage, and she was immediately handcuffed . . . and taken into custody." (*Id.* at 43-44.) Negron disputes defendants' version of events. In particular, she asserts that she did not flail, pull away, fight, punch, or kick as she was handcuffed. (Dkt. No. 19 ¶ 2(c), (f)-(i).) She also alleges that she was "slammed" from behind after closing the door behind Jose into the side of her home, as opposed to only "pushed." (Dkt. No. 15, Attach. 7 at 102, 104, 107; Dkt. No. 19 ¶ 2(d), (j).)

8

There are also issues regarding the seriousness of Negron's injuries. Undisputably, she suffered bruising and an abrasion to her eye, and shoulder bruising. (Dkt. No. 15, Attach. 7 at 144, 153-55; Dkt. No. 15, Attach 9 at 3-6.) Negron further contends that she ultimately required surgery to "reconstruct [her] whole shoulder" as a "result from [sic] the beating from the cops." (Dkt. No. 15, Attach. 7 at 32-33.)[2] All of these issues of fact must be resolved by a jury to determine whether defendants used excessive force.

Collateral estoppel[3] does not dictate that the motion be granted either. Indeed, a conviction for resisting arrest, which under New York law requires proof that the defendant "intentionally prevent[ed] or attempt[ed] to

---

[2] The court notes defendants' assertion that Negron has submitted inadmissible evidence regarding her injuries, and has fatally failed to come forward with expert evidence regarding causation. (Dkt. No. 20, Attach. 2 at 5-6.) Mindful of the requirement that "only admissible evidence need be considered" when ruling on a summary judgment motion, *see Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009), the court notes that sufficient admissible evidence exists to demonstrate an issue of fact regarding the severity of Negron's injuries—namely, her own deposition testimony. *See Phelan*, 2013 WL 5183664, at *2.

[3] This court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered, here, New York. *See Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000); *see also* 28 U.S.C. § 1738.

prevent a police officer or peace officer from effecting an authorized arrest of h[er]self or another person," N.Y. Penal Law § 205.30, "is not incompatible with [a] claim for excessive force." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).[4] Despite defendants' arguments, the criminal jury did not necessarily find that the testimony of officers Kindt and Jacobs was entirely true, including the portions that would suggest that the amount of force used by them was reasonable. (Dkt. No. 15, Attach. 10 at 70-71, 135-36.) All that can be gleaned from Negron's conviction for resisting arrest is that the jury found the elements of that crime to be satisfied, none of which concern the use of force by a police officer. Finally, the opinion of defendants' expert Richard Cox relies on the very facts that are in dispute, and, therefore, is of no moment at this juncture. (Dkt. No. 15, Attach. 11 ¶¶ 11, 19, 20; Dkt. No. 15, Attach. 13 at 2, 4.)

Briefly, turning to qualified immunity, because "[s]ummary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the

---

[4] The same can be said of Negron's conviction of disorderly conduct pertaining to her "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" by "engag[ing] in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal Law § 240.20(1).

defendant 'show[s] that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)), that defense is unavailable here in light of the factual disputes highlighted above. Given the foregoing, the case is deemed trial ready and the court, in due course, shall issue a trial scheduling order.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

11